IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DAVID DEBAUCHE,

                Plaintiff,                OPINION AND ORDER

    v.

                                          22-cv-115-wmc

MICHAEL GLASS, KYLE ZENKE,
NATHAN FOSSHAGE, MARIO LAVIA,
and LANCE RANDALL,

                Defendants.

---

Plaintiff David DeBauche, representing himself, claims that five correctional officers at Columbia Correctional Institution, where he is incarcerated, denied him access to the courts in violation of the First Amendment. Specifically, plaintiff claims that: defendants Lance Randall, Mario LaVia, and Nathan Fosshage confiscated and destroyed his legal materials and certain property items in August and September 2020; defendant Michael Glass was aware of this unconstitutional deprivation and did nothing to prevent it; and defendant Kyle Zenk assured plaintiff during multiple conversations that he would return plaintiff's property but failed to do so. Defendants have filed a motion for summary judgment as to all of plaintiff's claims, denying any wrongdoing and, in any event, arguing that plaintiff cannot demonstrate that the short confiscation any legal materials or property actually impeded his ability to access the courts.[1] (Dkt. #43.) The court will grant the motion because, even viewing the evidence in a light most favorable to plaintiff, no

---

[1] Defendants also assert that they are entitled to qualified immunity, but the court need not reach this argument, having found defendants are entitled to summary judgment on the merits for the reasons discussed in this opinion.

reasonable jury could find that defendants' actions in any way prejudiced plaintiff in pursuing his earlier lawsuit in this court.

## UNDISPUTED FACTS[2]

**A. Background**

Plaintiff David DeBauche is housed at Columbia Correctional Institution ("CCI"), where all of defendants are or were employed. Specifically, Michael Glass has been the Corrections Program Supervisor (or unit manager) of Restrictive Housing Units 1 and 2 since March 1, 2020; Lance Randall was a corrections officer from April 30, 2018, until March 17, 2021; Nathan Fosshage was a correctional sergeant and Mario LaVia was a correctional officer during all times relevant to this case; and Kyle Zenk served as the institution complaint examiner ("ICE") until he became a captain (or "supervising officer 2") in April 2023.

Department of Adult Institutions ("DAI") Policy 309.20.03 and its attachments (*see* dkt. #49-1) set limitations on the amount of personal property an inmate is allowed to have, including restrictions on the number of items and the overall space in cubic inches

---

[2] Unless otherwise indicated, the following facts are material and undisputed. The court has drawn these facts from the parties' proposed findings, defendants' response to plaintiff's proposed findings, and other evidence, all viewed in a light most favorable to plaintiff despite his failing to respond to defendants' proposed findings of fact as required by the court's summary judgment procedures. *See Miller v. Gonzalez*, 761 F.3d 822, 877 (7th Cir. 2014) ("We must . . . construe the record in the light most favorable to the nonmovant and avoid the temptation to decide which party's version of the facts is more likely true."). Still, the court has generally accepted defendants' proposed findings of fact as undisputed, where supported by admissible evidence, such as his declaration. In recognition that plaintiff is not represented by an attorney, however, the court has also attempted to consider those facts he disputes where *some* credible evidence arguably supports it, *or* he could reasonably have personal knowledge of it.

taken up by the items. For example, legal materials shall be limited to a box no larger than 8000 cubic inches, which is 20" x 20" x 20," *unless* the warden permits short-term storage to inmates who demonstrate a need for additional material in conjunction with ongoing litigation. (Dkt. #49-1 at 7, § I.D.) All other personal property -- excluding medical, legal, and larger permitted items -- shall not exceed 8,192 cubic inches, which is equivalent to a container measuring 32" x 16" x 16". (*Id*. at 4, § I.B.5.)

The parties in this case dispute both whether plaintiff was in compliance with these rules in August and September 2020, and whether plaintiff was afforded opportunities to comply with the property limits before his property was confiscated or destroyed.

B. Confiscation of Plaintiff's Property

On August 25, 2020, defendant Randall wrote incident report no. 437443 (dkt. #48-1), addressing plaintiff's alleged refusal to ensure his legal materials complied with the property limits outlined above. This occurred despite defendants Randall and Fosshage giving plaintiff opportunities to sort through his legal work in the dayroom.[3] After writing the report, Randall brought plaintiff's legal materials to the Housing Unit 7 property room, where he was later directed by Unit Manager Walker to ensure that plaintiff's property

---

[3] Defendants actually attest that plaintiff refused *multiple* opportunities to go through his property and cull what he wanted to dispose of or send out of the institution. In contrast, plaintiff maintains that: his property did not exceed the policy limits and he was given only one, limited opportunity to bring his legal materials within compliance with the policy. While plaintiff also vaguely avers that the warden of CCI had granted him permission to exceed the limit on legal materials in January 2020 (dkt. #60 at ¶¶ 8, 35, and 55), he has submitted no other evidence as to when or for how long that claimed permission was granted, nor whether the warden placed any further limits on the amount of legal materials plaintiff could retain.

was within proper limits.  Randall went through plaintiff's property on September 5, 2020, listing any items over the allowed limit as contraband and giving plaintiff any property that he was permitted to retain.[4]  While defendants Randall, Fosshage, and LaVia all attest to boxing, labeling, and taking this contraband to the security supervisor's office, plaintiff nevertheless claims that they destroyed many of his legal papers.

Randall issued plaintiff a second conduct report for possession of contraband on September 6, 2020.  After being found guilty in CCI administrative review, disposition was ordered to dispose of plaintiff's contraband.  However, CCI Warden Fuchs modified the final disposition on September 18, 2020, ordering that plaintiff's legal materials *not* be destroyed but returned to him in light of his being granted approval for an "expanded legal material" limit on September 4, 2020. (Dkt. #46-1, at 1.)  CCI Program Supervisor Glass communicated these orders to Sergeant Fosshage and Officers LaVia and Randall, who aver that they returned all of plaintiff's legal materials to him.[5]  However, plaintiff swears that he never received them.

While plaintiff subsequently filed two inmate complaints objecting to the confiscation and destruction of his legal materials, Inmate Complaint Examiner Zenk rejected both as moot after finding that plaintiff's legal materials were not destroyed and

---

[4] Plaintiff again takes issue with Randall's account, asserting that Walker was on vacation at the time.  However, plaintiff cites no evidence to support this contention other than his own declaration.  In particular, Randall does not explain:  (1) how he happens to have personal knowledge of Walker's vacation schedule; or (2) why Walker could not have issued his order at any point after August 25, 2020, but before Randall actually went through plaintiff's things in September 2020.

[5] Plaintiff avers that Glass knew that the other defendants had destroyed his legal materials and had not intention of returning them, but Glass denies this contention.

4

had been returned to plaintiff. In reply, plaintiff responds that he spoke directly with Zenk, who promised to retrieve his missing legal materials, but Zenk denies having any such in-person conversations with plaintiff.

### C. Plaintiff's Previous Lawsuit in Case No. '524[6]

In *DeBauche v. Mashak*, No. 17-cv-524-wmc (W.D. Wis. Jul. 6, 2017), plaintiff asserted Eighth Amendment deliberate indifference and state law negligence claims against four CCI employees based on alleged failures to provide adequate medical care for his severe back pain in 2016 and 2017, including withholding a medical mattress, ice bags, and pain medication. Defendants filed a motion for summary judgment on exhaustion grounds in November 2021 (*id.*, dkt. #88), after which plaintiff requested and was granted three extensions before filing his response brief on February 23, 2022. Plaintiff based his December 2021 and January 2022 motions for extension of time based on his having little to no access to the law library at the prison (*id.*, dkt. ##95 and 101), but then for the first time in his February 2022 motion, he claimed Officer Randall had destroyed his legal papers in October 2020 when this court refused to grant his request for a preliminary injunction and temporary restraining order (*id.*, dkt. #106). In his response brief (*id.*, dkt. #109), plaintiff made several, additional representations regarding various prison officials confiscating or destroying his legal materials between 2010 and 2016. However, he never argued that those legal materials (or the legal papers allegedly destroyed by Randall in

---

[6] The court may take judicial notice of matters of public record, including the docket, decisions, and records filed in plaintiff's previous civil case in this court. Fed R. Evid. 201(b); *Guerrero v. Howard Bank*, 74 F.4th 816, 819 (7th Cir. 2023).

October 2020) would have proved he had exhausted his administrative remedies for alleged wrongdoing occurring between 2016 and 2017.

Ultimately, the court granted defendants' motion for summary judgment in Case NO. '524 on April 28, 2022, finding that plaintiff had filed *23* inmate complaints between 2016 and 2017, but his *sole* complaint about ice did not relate to any officer refusing to provide him ice ordered by medical staff. Further, in that case, plaintiff admitted that he did not timely appeal the dismissal of his two complaints related to medical care for his back pain. (*Id.*, dkt. #117.) Specifically, the court noted that "[a]lthough DeBauche strongly contests his ability to appeal timely, he has not shown that he was actually prevented from filing his appeal of either inmate complaint [regarding medical care] on time or from raising the actual impediments he faced on the appeal form." (*Id.* at 7.) Indeed, even though plaintiff alleged instances in which CCI officials limited his access to legal materials or mishandled his inmate complaints, the court found his excuses for the delays in his bringing appeals "were so thin, [that it] must defer to CCE's exercise of reasonable discretion, especially since DeBauche does not explain why he did not raise these other excuses in his appeal to the CCE," nor otherwise "direct the court to a different, fully exhausted, inmate complaint." (*Id.* at 10.)

## OPINION

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving

party" to survive summary judgment. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-407 (7th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In deciding whether to grant summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255.

This court construes the filings of unrepresented parties like plaintiff generously, and it has done so here as set forth above. *See Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) (noting that courts "construe *pro se* filings liberally"). However, summary judgment has been repeatedly referred to as the "put up or shut up" moment for parties seeking to take their claims to trial in the Seventh Circuit. *Johnson v. Cambridge Indus. Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (citation omitted). At that point, plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts"; he must respond to defendants' showing of a lack of material disputes of fact by designating specific facts in affidavits, depositions, answers to interrogatories or admissions that establish there is a genuine, triable issue. *Anderson*, 477 U.S. at 256-57, 261. And because that evidence must be admissible at trial, plaintiff may *not* rely on inadmissible hearsay, speculation, or conclusory allegations to defeat summary judgment. *Prude v. Meli*, 76 F.4th 648, 661 (7th Cir. 2023); *Gorbitz v. Corvilla, Inc.*, 196 F.3d 879, 882 (7th Cir. 1999). Finally, a factual dispute can preclude summary judgment only if the facts "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

While the court has reviewed plaintiff's pleadings, briefs, and the evidence of record, including his deposition transcript, in the light most favorable to him, defendants are

7

entitled to summary judgment on plaintiff's access to courts claim against them because plaintiff has *not* demonstrated that any the alleged confiscation and destruction of his legal papers actually frustrated his ability to litigate the issue of exhaustion in Case No. '524.

The First Amendment right to petition the government for redress of grievances includes the right of access to the courts. *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009). To prevail on an access to courts claim, however, plaintiff must show not just that "prison officials interfered with his legal materials," but that "the interference actually prejudiced him in his pending litigation." *Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013). In other words, defendants must have engaged in conduct that caused plaintiff "actual injury" by "frustrating" or "impeding" his bringing a non-frivolous claim regarding a criminal conviction, sentence, or conditions of confinement. *Lewis v. Casey*, 518 U.S. 343, 350-54 (1996). Indeed, that injury must be a *specific* hinderance related to a lawsuit, *Owens v. Evans*, 878 F.3d 559, 565 (7th Cir. 2017) -- such as "the loss of an opportunity to sue," *Christopher v. Harbury*, 536 U.S. 403, 414 (2002), or "the dismissal of a complaint or an inability to file a complaint at all," *Beese v. Todd*, 35 F. App'x 241, 243-44 (7th Cir. 2002).

Here, plaintiff now alleges that Randall disposed of an envelope containing 11 inmate complaints concerning several issues -- including the denial of a medical mattress, ice bags, and other care for his back -- which Inmate Complaint Examiner M. Leiser had returned without acknowledgement. While plaintiff cursorily argues that he could have used the returned complaints to show that he had filed timely complaints about his medical issues, he does not describe any of them with meaningful specificity, including *when* those

8

complaints were submitted, *whom* he accused of wrongdoing, or *what* events they involved. Thus, he offers no details that might permit the court to determine their relevance to his medical care claims in Case No. '524, much less why neither of these complaints nor their outcomes appear anywhere in CCI's system while 23 others in the same period all do.

Regardless, as discussed above, this court already dismissed Case No, '524 on exhaustion grounds because plaintiff had failed to file any complaint about being denied medical ice for his back *and* failed to timely appeal the denial of the only two complaints regarding other aspects of his back care. Thus, no reasonable trier of fact would conclude that any of plaintiff's supposed, returned complaints had any relevance to his failure to appeal two of his complaints timely. Indeed, it is undisputed that both complaints had been accepted *and* ruled on. This as much as anything explains why plaintiff did not cite these allegedly missing complaints in his late-filed appeals to CCI's complaint examiner *or* in his response to the exhaustion motion in Case No. '524.

Finally, even if the court were able to assume that plaintiff filed a complaint regarding medical ice that was returned, whether such a complaint would have excused his failure to exhaust his claims in his previous case is a matter of pure speculation, not fact. For all these reasons, plaintiff has failed to meet his burden of showing that a reasonable trier of fact could find that defendants' actions actually prejudiced him in his earlier lawsuit.

Accordingly, defendants are entitled to summary judgment on plaintiff's access to courts claims asserted against them.

9

ORDER

IT IS ORDERED that defendants' motion for summary judgment (dkt. #43) is GRANTED. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 24th day of April, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge